IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| DANIEL DEFENSE, LLC | ) |
| Plaintiff | ) |
| v. | ) Civ. Action No. CV421-334 |
| THE TACTICAL EDGE, LLC | ) |
| Defendant | ) |

# COMPLAINT

Daniel Defense now submits its Complaint against The Tactical Edge, showing as follows:

## PARTIES AND JURISDICTION

1. Daniel Defense, LLC is a Georgia Limited Liability Company with its sole member as Daniel Defense Holdings, LLC. Daniel Defense Holdings, LLC is a Georgia Limited Liability Company with its sole member as M.C. Daniel Group, Inc. M.C. Daniel Group is a Georgia corporation with its principal place of doing business is in Georgia.

2. Daniel Defense submits to the jurisdiction and venue of this Court.

3. The Tactical Edge, LLC is a Tennessee Limited Liability Company. It can be served through its registered agent, Robert Snyder, at 1253 MEACHEM DR CLARKSVILLE, TN 37042-0727 USA, or at its principal office address at 1925 Ford Campbell Blvd Ste C, Clarksville, TN 37042-7786. The Tactical Edge has two members. On information and belief, both members are Tennessee citizens and residents. Plaintiff will be petitioning the Court for limited, written jurisdictional discovery to provide additional evidence that full diversity exists.

4. The Tactical Edge is subject to personal jurisdiction in this Court because it purposefully entered a business transaction with Daniel Defense in this state, district, and division; it traveled to this state, district, and division to consummate its transaction with Daniel Defense; it purposefully directed economic activity into this state, district, and division; and it made a fraudulent and/or negligent misrepresentation in this state, district, and division that caused economic damage in this state, district, and division.

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are completely diverse, as established in paragraphs 1 and 3 of this Complaint, and the amount in controversy exceeds $75,000.00.

6. Venue is appropriate in this Court under 28 U.S.C. § 1391 because a substantial portion of the events underlying these causes of action occurred in this district and division, as shown in paragraph 4.

**FACTS COMMON TO ALL COUNTS**

7. In late 2020, Daniel Defense sought a supplier of manufactured components for a Daniel Defense-branded Pistol Caliber Carbine Firearm ("PCC firearm").

8. A PCC firearm is a popular style of weapon that typically has a longer barrel than a conventional handgun and is fired with only one hand on the weapon's pistol grip, but that is capable of discharging pistol-caliber ammunition, such as, *inter alia*, the standard 9x19mm Parabellum round fired from many ordinary semi-automatic handguns.

9. Daniel Defense began negotiations with The Tactical Edge to supply design services and manufacture components for a PCC firearm.

10. Daniel Defense and The Tactical Edge eventually negotiated a contractual agreement in which each company would design and manufacture certain PCC firearm components, which would then be combined by Daniel Defense into an integrated, saleable weapon.

11. Specifically, the parties envisioned that The Tactical Edge would design and manufacture Tactical Edge Component Sets, which would include the PCC firearms' lower receiver assembly, upper receiver, gas buffer tube, and bolt carrier.

12. During the discussions leading to the agreement between the two parties, The Tactical Edge represented to Daniel Defense that it had the capacity, resources, intellectual property, and technical ability to design, produce, and manufacture all parts needed for the Tactical Edge Component Sets.

13. During the discussions leading to the agreement between the two parties, The Tactical Edge represented to Daniel Defense that it had the capacity, resources, intellectual property, and technical ability to create Tactical Edge Component Sets of a quality commensurate with the rest of Daniel Defense's product line and quality standards.

14. The Tactical Edge made each of these representations knowing, and with the intent, that they would induce Daniel Defense to enter into the contract.

15. However, The Tactical Edge did not in fact have the capacity to produce Tactical Edge Component Sets that were functional, that could reliably be incorporated into a PCC firearm, that met the intellectual property needs of the project, or that complied with Daniel Defense's quality standards.

16. The Tactical Edge made the false representations about its design expertise, manufacturing capacity, resources, intellectual property, and technical ability knowing that they were false at the time.

17. The Tactical Edge made these statements orally, during a meeting at Daniel Defense's headquarters in Black Creek, Georgia, on or about December 2, 2020 at 10:00 am. These statements were made through The Tactical Edge's CEO, Robert Snyder, to Daniel Defense personnel including Jason Lovett, Larry Jones, GB Ash and Scott Burnett.

18. Similar statements were also made in a Power Point Presentation that The Tactical Edge provided to Daniel Defense on April 29, 2021.

19. Because of The Tactical Edge's knowingly false representations, the parties entered into the contract, memorialized in a May 13, 2021 Letter of Intent, a true and correct copy of which is attached as **Exhibit 1** hereto.

20. The Letter of Intent provided that "Tactical Edge has requested that Daniel Defense pre-pay on its first purchase order. Tactical Edge agrees to return the pre-paid funds, if Tactical Edge is unable to deliver the ordered components in the purchase order."

21. The Letter of Intent further provided that "Tactical Edge agrees to be bound by the Terms and Conditions in the purchase order (including, the Q/A requirements) and any requirement in the drawings."

22. The Letter of Intent further provided that time was of the essence for both parties.

23. Pursuant to the Letter of Intent, Daniel Defense prepaid in the amount of **$302,827.25.**

24. Pursuant to the Letter of Intent, the parties agreed on a series of purchase orders, which called for delivery in June, July and August, 2021. True and accurate copies of the purchase orders are attached collectively as **Exhibit 2** hereto. The Tactical Edge agreed to be bound by the terms and conditions appended to those Purchase Orders.

25. The Tactical Edge repeatedly failed to deliver parts that met the requirements of the technical specifications and drawings as called for by Daniel Defense.

26. Specifically, The Tactical Edge failed to produce lower receiver assemblies and upper receivers that met quality standards and could be integrated into a functioning PCC firearm (as outlined herein). The Tactical Edge initially provided 50 lower receiver assemblies, 50 upper receivers, 50 bolt carriers, 50 9x19mm Parabellum hammers, and 25 rifle buffers. In this initial grouping, the 50 lower receiver assemblies and 50 upper receivers were not functional, as outlined herein. Accordingly, no parts provided in the initial set could be incorporated into a saleable Daniel Defense PCC firearm.

27. The Tactical Edge then provided 700 rifle buffers and 700 bolt carriers, but without providing functional lower receiver assemblies and upper receivers (as outlined herein), those parts could not be integrated into a saleable Daniel Defense PCC firearm.

28. Daniel Defense allowed additional time for The Tactical Edge to demonstrate that it could produce fully functioning prototypes and complete Tactical Edge Component Sets that met the Daniel Defense quality standards and specifications, along with test and inspection data.

29. The Tactical Edge again failed to produce conforming goods and failed to produce test and inspection data.

30. By way of example, the design and manufacturing deficiencies in the Tactical Edge Component Sets include:

    a. The bolt catch over-traveled the follower in the magazine.

    b. The top plate bent because of the pressure of repeated magazine insertions, eventually rendering the bolt catch non-functional.

    c. Because of the design of the bolt catch, the pivot pin eventually bent and became unusable.

31. The deficiencies described rendered the prototype PCC firearms inoperable in some cases, and they rendered the PCC firearm unfit for sale under the Daniel Defense brand. The Tactical Edge Component Sets and the integrated PCC firearms did not meet the quality and performance standards the parties had agreed upon.

32. Moreover, The Tactical Edge provided designs for Daniel Defense without providing certain assurance that the PCC firearms would not infringe upon patents of others (i.e., freedom to operate) after receiving notice from Daniel Defense of such concerns.

33. In short, The Tactical Edge completely failed to discharge its duties under the agreement between the parties.

34. On or about October 20, 2021, Daniel Defense provided The Tactical Edge termination notice under Paragraph 6 of the Standard Terms and Conditions of the Daniel Defense Purchase Orders issued pursuant to the May 13, 2021 Letter of Intent between Daniel Defense and The Tactical Edge. Daniel Defense demanded the repayment of the $302,827.25 in prepaid funds.

35. To date, The Tactical Edge has not returned the $302,827.25 prepayment that Daniel Defense made and that Daniel Defense is entitled under the parties' contract to have returned.

## COUNT I:  BREACH OF CONTRACT

36. Daniel Defense reincorporates the factual allegations in paragraphs 7-35 as if restated herein.

37. Daniel Defense and The Tactical Edge reached an enforceable agreement for The Tactical Edge to create Tactical Edge Component Systems in exchange for payment from Daniel Defense.

38. The agreement allowed Daniel Defense to demand the return of any prepaid funds if The Tactical Edge did not perform under the agreement.

39. A material term of that agreement was that the Tactical Edge Component Systems would be delivered in a timely fashion in the quantities ordered.

40. A material term of that agreement was that the Tactical Edge Component Systems would be functional and would meet the quality standards of Daniel Defense.

41. A material term of that agreement was that the Tactical Edge would assure Daniel Defense that The Tactical Edge was authorized to utilize all intellectual property incorporated into the Tactical Edge Component Sets (i.e., freedom to operate).

42. Daniel Defense performed all conditions precedent under the parties' agreement.

43. The Tactical Edge breached the agreement by failing to perform, and specifically by failing to discharge the material terms in paragraphs 34-36.

44. Daniel Defense prepaid $302,827.25 pursuant to the agreement and requested return of the same after The Tactical Edge failed to perform under the contract.  The Tactical Edge has failed to return these prepaid funds.

45. Daniel Defense was damaged by The Tactical Edge's breach.

### COUNT II:  FRAUD / FRAUDULENT INDUCEMENT

46. Daniel Defense reincorporates the factual allegations in paragraphs 7-35 as if restated herein.

47. During the discussions leading to the agreement between the two parties, The Tactical Edge represented to Daniel Defense that it had the capacity, resources, intellectual property (i.e., freedom to operate), and technical ability to design, produce, and manufacture all parts needed for the Tactical Edge Component Sets.

48. During the discussions leading to the agreement between the two parties, The Tactical Edge represented to Daniel Defense that it had the capacity, resources, intellectual property (i.e., freedom to operate), and technical ability to create Tactical Edge Component Sets of a quality commensurate with the rest of Daniel Defense's product line and quality standards.

49. The Tactical Edge made each of these representations knowing, and with the intent, that they would induce Daniel Defense to enter into the contract.

50. However, The Tactical Edge did not in fact have the capacity to produce Tactical Edge Component Sets that were functional, that could reliably be incorporated into a PCC firearm, that met the intellectual property needs of the project (i.e., freedom to operate), or that complied with Daniel Defense's quality standards.

51. The Tactical Edge made the false representations about its design expertise, manufacturing capacity, resources, intellectual property (i.e., freedom to operate), and technical ability knowing that they were false at the time.

52. Daniel Defense was justified in relying on The Tactical Edge's fraudulent statements.

53. The Tactical Edge's fraudulent misrepresentations proximately caused Daniel Defense (1) to enter into a contract that The Tactical Edge knew could not be performed, (2) to pre-pay $302,827.25, and (3) to lose the opportunity to work with a vendor that could actually perform the terms of the agreement, thereby missing the opportunity to bring a Daniel Defense-branded PCC firearm to the market at an opportune time.

### COUNT III:  NEGLIGENT MISREPRESENTATION
### (in the alternative)

54. Daniel Defense reincorporates the factual allegations in paragraphs 7-35 as if restated herein.

55. Pursuant to the contract between Daniel Defense and The Tactical Edge, The Tactical Edge was required to provide Daniel Defense with information in its professional capacity, including design specifications for the elements of the Tactical Edge Component Sets.

56. The Tactical Edge negligently made misrepresentations to Daniel Defense in the course of negotiating the parties' contract. Specifically, it negligently misrepresented its design expertise, manufacturing capacity, resources, intellectual property (i.e., freedom to operate), and technical ability.

57. The Tactical Edge also negligently made misrepresentations during the course of its contract with Daniel Defense, when it provided designs to Daniel Defense without making assurances that it was authorized to utilize all incorporated intellectual property (i.e., freedom to operate), and in fact represented that there were no potential problems with the intellectual property incorporated into those designs.

58. Pursuant to the contract between Daniel Defense and The Tactical Edge, The Tactical Edge was required to provide Daniel Defense with information in its professional capacity, including design specifications for the elements of the Tactical Edge Component Sets.

59. Daniel Defense was justified in relying on The Tactical Edge's statements described above.

60. The Tactical Edge's negligent misrepresentations proximately caused Daniel Defense (1) to enter into a contract that The Tactical Edge knew could not be performed, (2) to pre-pay $302,827.25, and (3) to lose the opportunity to work with a vendor that could actually perform the terms of the agreement, thereby missing the opportunity to bring a Daniel Defense-branded PCC firearm to the market at an opportune time.

## COUNT IV:  PUNITIVE DAMAGES

61. Daniel Defense reincorporates the factual allegations in paragraphs 7-35 and 46-53 as if restated herein.

62. The Tactical Edge's fraudulent statements and fraudulent inducement demonstrate willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

63. Daniel Defense is entitled to punitive damages under O.C.G.A. § 51-12-5.1 in an amount no less than $250,000.00.

## COUNT V:  ATTORNEY'S FEES

64. Daniel Defense reincorporates the factual allegations in paragraphs 7-33 as if restated herein.

65. The Tactical Edge has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense.

66. Daniel Defense is entitled to recover statutory attorneys' fees under O.C.G.A. § 13-6-11.

WHEREFORE, Daniel Defense prays for the following relief:

A)  That summons be issued;

B)  A trial by jury;

C)  Compensatory damages of no less than $302,827.25;

D)  Punitive damages in the amount of $250,000.00;

E)  Statutory attorney's fees under O.C.G.A. § 13-6-11; and

F)  All other such relief that the Court deems just and proper.

RESPECTFULLY SUBMITTED, this 22nd day of November, 2021.

BOUHAN FALLIGANT LLP

/s/ Lucas D. Bradley
LUCAS D. BRADLEY
Georgia Bar No. 672136
GLEN M. DARBYSHIRE
Georgia Bar No. 205210
Physical: One West Park Ave.
Savannah, Georgia 31401
Mailing:  P.O. Box 2139
Savannah, Georgia 31402
T:  912.232.7000
F:  912.233.0811
ldbradley@bouhan.com
gdarbyshire@bouhan.com