IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

DANIEL DEFENSE, LLC,

    Plaintiff,

v.

THE TACTICAL EDGE, LLC,

    Defendant.

CIVIL ACTION NO.: 4:21-cv-334

**O R D E R**

This matter comes before the Court on Plaintiff Daniel Defense, LLC's Motion for Default Judgment. (Doc. 68.) For the reasons below, the Court **GRANTS** Plaintiff's Motion **IN PART**. Plaintiff has shown that its claims fall within this Court's subject matter jurisdiction. Moreover, Defendant The Tactical Edge, LLC is subject to the Court's personal jurisdiction. Additionally, the Amended Complaint sufficiently establishes Defendant's liability on Plaintiff's claims of Breach of Contract (Count I), Fraud/Fraudulent Inducement (Count II), Negligent Misrepresentation (Count III), Punitive Damages (Count IV), and Attorneys' Fees (Count V). However, the Court **RESERVES RULING** as to the amount of damages and will hold a hearing on damages on March 5, 2024, at 10:00 a.m., in Courtroom One, 8 Southern Oaks Court, Savannah, Georgia.

**BACKGROUND**

This action stems from a failed agreement between Plaintiff Daniel Defense, LLC, and Defendant The Tactical Edge, LLC, ("Tactical Edge") to design and manufacture a new nine-millimeter pistol caliber carbine for Plaintiff to market and sell. After the deal fell through,

Plaintiff sued Defendant alleging that Defendant misrepresented its expertise and capacity to timely produce functioning component sets and breached the agreement to supply Plaintiff with conforming sets by prescribed deadlines. (Doc. 1.) Defendant asserted counterclaims against Plaintiff for breach of contract, intentional misconduct, punitive damages, and attorney's fees. (Doc. 10.) Shortly before filing the parties filed their summary judgment motions, Plaintiff filed an Amended Complaint. (Doc. 36.) The Amended Complaint clarified a jurisdiction issue and continued to assert claims for breach of contract (Count I); fraud/fraudulent inducement (Count II), and, in the alternative, negligent misrepresentation (Count III); punitive damages (Count IV); and attorneys' fees (Count V). (Doc. 36.)

The Court's Order on the parties' cross motions for summary judgment detailed the facts surrounding the parties' claims and counterclaims. (Doc. 60, pp. 2—11.) In that Order, the Court granted Plaintiff summary judgment on all of Defendant's counterclaims. (Id. at pp. 38—45.) As to each of Plaintiff's claims, the Court found that genuine disputes of material fact existed that precluded summary judgment in either party's favor. (Id. at pp. 14—38.) The Court also found that Plaintiff is entitled to sanctions under Federal Rule of Civil Procedure 37(c)(1) for Defendant's failure to supplement its interrogatory responses. (Id. at pp. 23—33.) Thus, the Court ordered, among other things, that Defendant must pay Plaintiff's costs incurred to prepare the Motion for Sanctions. (Id. at pp. 32—33.)

On April 5, 2023, Defendant's counsel moved to withdraw from this matter, and the Court granted the Motion on April 10, 2023. (Doc. 55.) In that Order, the Court explained that Defendant cannot represent itself and that it must retain counsel to represent it. (Id. at p. 2.) The Court directed Defendant's counsel to provide the Order to Defendant, (id.), and counsel quickly complied with that directive, (doc. 56). On May 12, 2023, the Court directed Defendant to obtain

new counsel within thirty days and explained that if Defendant failed to do so the Court would enter default against it. (Doc. 59.) Defendant failed to meet that directive, and the Court directed the Clerk of Court to enter default against Defendant. (Doc. 63.) The Clerk entered Defendant's default on July 17, 2023, (doc. 64), and Plaintiff moved for default judgment on August 23, 2023, (doc. 68).

In the nearly nine months since the Court granted Defendant's counsel's motion to withdraw, Defendant has not retained counsel or otherwise properly appeared. In August 2023, long after the deadline to retain counsel had passed, Mr. Rob Snyder, a non-attorney principal of Defendant, attempted to move for additional time to retain counsel. (Doc. 67.) The Court dismissed that request and reiterated that Defendant, a corporate defendant, can only appear through counsel. (Doc. 70.)

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 55 establishes a two-step procedure for a party to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after receiving the clerk's default, the Court can enter a default judgment provided the defendant is not an infant or incompetent. Fed. R. Civ. P. 55(b)(2). The clerk's entry of default does not automatically warrant entry of default judgment. "[T]hree distinct matters emerge as essential in considering any default judgment: (1) jurisdiction; (2) liability; and (3) damages. Before the Court can grant plaintiff's motion for default judgment, all three must be established." Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004). Thus, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which

3

are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007); see also Eagle Hosp. Physicians v. SRG Consulting, 561 F.3d 1298, 1307 (11th Cir. 2009). In assessing liability, the Court must employ the same standard as when addressing a Rule 12(b)(6) motion to dismiss for failure to state a claim. Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015) ("Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim.").

## DISCUSSION

### I.  Jurisdiction

#### A.  Subject Matter Jurisdiction

Plaintiff's claims fall squarely within this Court's diversity subject matter jurisdiction set forth in 28 U.S.C. § 1332. Plaintiff alleges that Defendant is a Tennessee limited liability company with two members who are both citizens and residents of Tennessee. (Doc. 36, pp. 1—2.) A limited liability company ("LLC") "is a citizen of any state of which a member of the company is a citizen." Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004). Plaintiff is a Georgia limited liability company with one member, Daniel Defense Holdings, LLC. (Id. at p. 1.) Daniel Defense Holdings is a Georgia limited liability company with two members, one that is a Georgia corporation with its principal place of business in Georgia and another who is a citizen and resident of Texas. (Id.) Thus, Plaintiff is a citizen of Georgia and Texas, and Defendant is a citizen of Tennessee. Accordingly, complete diversity of citizenship exists between Plaintiff and Defendant. Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998) ("Diversity jurisdiction requires complete diversity; every plaintiff must be

4

diverse from every defendant."). The $75,000 amount in controversy threshold is also met as Plaintiff requests "no less than $302,827.25" in compensatory damages for Defendant's breach of contract. (Doc. 36, p. 10.)

### B.     Personal Jurisdiction[1]

The Court must "satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant." Odyssey Marine Expl., Inc. v. Unidentified, Wrecked & Abandoned Sailing Vessel, 727 F. Supp. 2d 1341, 1345 (M.D. Fla. 2010); see also Geodetic Servs., Inc. v. Zhenghzou Sunward Tech. Co., No. 8:13-CV-1595-T-35TBM, 2014 WL 12620804, at *2 (M.D. Fla. Apr. 4, 2014) ("A default judgment is void in the absence of the Court's personal jurisdiction over the defendant . . . ."). On this front, Plaintiff alleges that Defendant "purposefully entered a business transaction with [Plaintiff] in this state, . . . traveled to this state, . . . to consummate its transaction with [Plaintiff], . . . purposefully directed economic activity into this state, . . . [and] made a fraudulent and/or negligent misrepresentation in this state . . . that caused economic damage in this state . . . ." (Doc. 36, p. 2.)

The Court can exercise personal jurisdiction over Defendant only if doing so complies with Georgia's long-arm statute and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257–58 (11th Cir. 2010) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009)). The Georgia long-arm statute, O.C.G.A. § 9-10-91, does not grant jurisdiction that is "coextensive with procedural due process," and "imposes independent obligations that a plaintiff

---

[1] Defendant likely waived personal jurisdiction by appearing in this Court without objection. See Fed. R. Civ. P. 12(b), (h); Muldrow v. EZ E-File Tax Preparers, Inc., No. 22-12108, 2023 WL 3476416, at *4 (11th Cir. May 16, 2023). Even so, the Court assesses its jurisdiction over Defendant in an abundance of caution.

must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." Id. at 1259 (citing Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, Iowa, 620 S.E.2d 352 (Ga. 2005)).  Thus, the Court must apply the "specific limitations and requirements of O.C.G.A. § 9-10-91 literally and must engage in a statutory examination that is independent of, and distinct from, the constitutional analysis to ensure that both, separate prongs of the jurisdictional inquiry are satisfied." Id. at 1263.  If the long-arm statute's requirements are satisfied, the Court then determines whether the exercise of jurisdiction comports with federal due process.

Among other things, the Georgia long-arm statute permits the exercise of jurisdiction over a nonresident who, personally or through an agent, transacts business within Georgia.  O.C.G.A. § 9-10-91(1).[2]  In determining whether jurisdiction can be exercised over a nonresident defendant under subsection (1) of the Georgia long-arm statute, the Supreme Court of Georgia has stated:

> 'jurisdiction exists on the basis of transacting business in this state if (1) the nonresident has purposefully done some act or consummated some transaction in this state, (2) [] the cause of action arises from or is connected with such act or transaction, and (3) [] the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.'

Amerireach.com, LLC v. Walker, 719 S.E.2d 489, 496 (Ga. 2011) (quoting Aero Toy Store v. Grieves, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006)).  The first two factors determine whether "a defendant has established the minimum contacts with the forum state necessary for the exercise of jurisdiction," and, if those minimum contacts exist, the third element determines whether the exercise of jurisdiction "does not result solely from random, fortuitous or attenuated contacts." Paxton v. Citizens Bank & Tr. of W. Ga., 704 S.E.2d 215, 219 (Ga. Ct. App. 2010).  Physical

---

[2]  It appears that Plaintiff also alleges that Defendant is subject to the Court's jurisdiction under O.C.G.A. § 9-10-91(2) because it committed a tortious act within Georgia.  The Court need not assess this argument given that Defendant transacted business in Georgia.

6

presence in the state is not a requisite for jurisdiction under this subsection, and "Georgia allows the assertion of long-arm jurisdiction over nonresidents based on business conducted through . . . Internet contacts." Id. (quoting ATCO Sign & Lighting Co. v. Stamm Mfg., 680 S.E.2d 571, 576 (Ga. Ct. App. 2009)). The ultimate question is whether the defendant engaged in conduct directed at Georgia and could "fairly be said" to have literally "transacted" business in the state of Georgia. Diamond Crystal Brands, Inc., 593 F.3d at 1264; see also id. at 1264 n.18 ("'Transact' means 'to prosecute negotiations,' to 'carry on business,' 'to carry out,' or 'to carry on.'") (quoting Webster's Third New Int'l Dictionary 2425 (1993)).

Defendant purposefully transacted business in Georgia. It entered an agreement in Georgia with a Georgia company through which it agreed to take certain actions in the state, and it delivered products to the state. As part of the contract negotiations, Defendant's representatives traveled to Plaintiff's headquarters in Georgia where they made many representations underlying Plaintiff's claims. (Doc. 36, p. 4.) Also, this lawsuit directly arises from Defendant's transactions in Georgia. As a result, exercising jurisdiction over Defendant is appropriate under Georgia's long-arm statute. See Diamond Crystal Brands, Inc., 593 F.3d at 1265 (finding defendant transacted business in Georgia under O.C.G.A. § 9-10-91(1) where, among other things, goods purchased under contract were picked up by defendant's customers in Georgia); Thomas v. Strange Eng'g, Inc., No. CV 111-074, 2012 WL 993244, at *5 (S.D. Ga. Mar. 22, 2012) ("Defendant transacted business in Georgia. Defendant shipped a product to Georgia and derived revenue from the sale of that product. Nothing in subsection (1) of the long-arm statute 'requires the physical presence of the nonresident in Georgia or minimizes the import of a nonresident's intangible contacts with the State.'") (quoting Innovative Clinical & Consulting Servs., 620 S.E.2d at 355).

Turning to step two of the personal jurisdiction analysis, the Due Process Clause of the Fourteenth Amendment allows for two types of personal jurisdiction, "general" and "specific." See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923–24 (2011). General personal jurisdiction arises where "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against [the corporation] on causes of action arising from dealings entirely distinct from those activities." Id. (quoting Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement, 326 U.S. 310, 326 (1945) (first alteration in original)). On the other hand, specific personal jurisdiction arises based on a party's contacts with the forum state that are related to the cause of action. Id.; see also Helicopteros Nacionales de Colombia, N.A. v. Hall, 466 U.S. 408, 414 nn.8 & 9 (1984); Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 857 n.41 (11th Cir. 1990). Because general jurisdiction is based on activity unrelated to a particular cause of action, the "due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction." Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000). Under the more exacting general jurisdiction standard, due process requires that a defendant's "affiliations with the State [be] so 'continuous and systematic' as to render [it] essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 139 (2014) (quotation and citation omitted). For either general or specific jurisdiction to comport with due process, the defendant must have certain minimum contacts with the state, and "[t]he minimum contacts inquiry focuses on 'the relationship among the defendant, the forum, and the litigation.' This inquiry ensures that a defendant is haled into court in a forum state based on the defendant's own affiliation with the state, rather than the 'random, fortuitous, or attenuated' contacts it makes by interacting with other persons affiliated

with the state." Waite v. All Acquisition Corp., 901 F.3d 1307, 1312 (11th Cir. 2018) (quoting Walden v. Fiore, 571 U.S. 277, 284 (2014)) (internal citations omitted).

In this case, the Amended Complaint establishes specific jurisdiction over Defendant. To assess specific jurisdiction, the Court must apply a "three-part test." Waite, 901 F.3d at 1313 (citing Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355 (11th Cir. 2013)). The Court must weigh: (1) whether Plaintiff's claim arises out of or relates to the nonresident defendant's contacts with Georgia; (2) whether Defendant purposely availed himself of the privilege of conducting activities in Georgia; and (3) whether exercising jurisdiction comports with traditional notions of fair play and substantial justice. Id.

Plaintiff's claims arise out of and relate to Defendant's contacts with Georgia. Plaintiff asserts that Defendant breached a contract that it made with Plaintiff, a Georgia corporation, to deliver products to Plaintiff in Georgia. Plaintiff also claims that Defendant made fraudulent misrepresentations while negotiating with Plaintiff in Georgia. These facts establish a "direct causal relationship between the defendant[s], the forum, and the litigation." Louis Vuitton Malletier, 736 F.3d at 1355–56. Further, Plaintiff has sufficiently alleged that Defendant has sufficient contacts with Georgia such that it has purposely availed itself of the privilege of conducting activities within the state. Further, Defendant purposely availed itself of the privilege of doing business in Georgia by travelling to Georgia for contractual negotiations, entering into a significant business arrangement with a Georgia corporation, guaranteeing the performance of contractual obligations in Georgia, and shipping parts to a Georgia corporation that were to be incorporated into firearms manufactured in Georgia. Thus, Defendant had sufficient minimum contacts with Georgia, and those contacts related to Plaintiff's claims.

Ordinarily, the burden would now shift to the non-resident defendant to present a "compelling case" that exercising jurisdiction over them would violate traditional notions of fair play and substantial justice. Louis Vuitton Malletier, 736 F.3d at 1355. But because Defendant has defaulted, it has not made any such arguments. All the same, the Court has considered the following factors:

> (a) the burden on the defendant, (b) the forum State's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and ([e]) the shared interest of the several States in furthering fundamental substantive social policies.

Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1251 (11th Cir. 2000) (citing Burger King v. Rudzewicz, 471 U.S. 462, 466 (1985)). Having weighed each of these factors, the Court finds that exercising jurisdiction over Defendant would not violate traditional notions of fair play and substantial justice.

## II. Liability

### A. Breach of Contract (Count I)

Count I of the Amended Complaint alleges that Defendant breached the parties' agreement by failing to produce conforming component sets and inspection data. (Doc. 36, pp. 6–7.) According to Plaintiff, the deficiencies in the design and manufacturing of the components did not meet the quality and performance standards agreed upon by the parties and rendered the prototype firearms inoperable and unfit for sale under Plaintiff's brand. (Id.)

The Court analyzed Plaintiff's breach of contract claim in detail in its Order on the parties' motions for summary judgment. (See doc. 60, pp. 14—22.) In that discussion, the Court explained that Plaintiff had pointed to sufficient record evidence for its breach of contract claim to survive summary judgment. (Id.) If Plaintiff's claims can survive the more exacting summary judgment

standard under Rule 56, they can satisfy the Rule 12(b)(6) plausibility standard applied at this stage. C.f. Alexander v. Lencrerot, No. 1:21-CV-04846-SDG, 2023 WL 5208019, at *5 (N.D. Ga. Aug. 14, 2023) ("Alexander's response, which could not surmount the more deferential motion-to-dismiss standard, likewise fails under the more exacting scrutiny of summary judgment."); see also Walker v. Smokes, No. 6:15-CV-57, 2018 WL 3241926, at *9 (S.D. Ga. July 3, 2018), report and recommendation adopted, No. 6:15-CV-57, 2018 WL 3715830 (S.D. Ga. Aug. 3, 2018) ("It appears Defendants wish for the Court to place upon Plaintiff the more exacting standards required when a party opposes a motion for summary judgment rather than the plausibility standard applicable to motions to dismiss.").

Regardless of the Court's prior discussion, with Defendant having now been found in default, the Court assumes the truth of the well pleaded allegations of the Amended Complaint. Those allegations meet the elements of a breach of contract claim: "(1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." Brooks v. Branch Banking & Tr. Co., 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015).[3] Plaintiff alleges that it entered a valid contract with Defendant, titled the Letter of Intent, that obligated Defendant to provide specific components to Plaintiff. (Doc. 36, pp. 4, 6—7; doc. 36-1.) The Amended Complaint plausibly alleges that Defendant breached multiple materials terms of the parties' agreement by not providing conforming goods within the agreed upon production period and failing to fulfill other specifications of the contract. (Doc. 36, pp. 5—7.)Plaintiff has also alleged that it suffered

---

[3] Because this Court is sitting in diversity, it applies the choice-of-law rules of the forum state (i.e., Georgia). See Nat'l Fire Ins. of Hartford v. Thrasher Contracting, 142 F. Supp. 3d 1309, 1312 n.1 (N.D. Ga. 2015). In the context of contracts, Georgia follows the *lex loci contractus* doctrine. See id. This case involves a contract executed in Georgia that concerned goods to be supplied in Georgia. Accordingly, the Court applies Georgia law. See Thrasher Contracting, 142 F. Supp. 3d at 1312 n.1 (applying Georgia law where it "appears all of the contracts in this case were both formed and performed—or at least *intended* to be performed—in Georgia") (emphasis in original).

11

damages from Defendant's breach including the loss of its prepayment of $302,827.25 which Defendant has not returned. (Id. at p. 7.)

For all these reasons, the Court grants Plaintiff default judgment against Defendant on the issue of liability as to Plaintiff's claim of breach of contract in Count I of the Amended Complaint.

**B.      Fraud/ Fraudulent Inducement (Count II) and Negligent Misrepresentation (Count III)**

Count II of the Amended Complaint alleges that Defendant, intending to induce Plaintiff to work with Defendant, knowingly misrepresented that it possessed the capacity, resources, intellectual property, and technical ability to design, produce, and manufacture the parts needed for the component sets. (Doc. 36, pp. 7–8.) Count III, which is alleged in the alternative to Count II, asserts the same allegations as Count II, except that it contends that Defendant's misrepresentations were negligently, rather than knowingly, made. (Id. at pp. 9–10.) Defendant previously requested summary judgment as to Counts II and III, and the Court denied that request. (See doc. 60, pp. 33—38.) As with Count I, the Court's denial of Defendant's request for summary judgment on these counts logically establishes that Plaintiff can surmount the less stringent plausibility standard applicable as this stage. In any event, the Court finds that, accepting Plaintiff's allegations as true, it has established Defendant's liability on both counts.

To establish a fraud or fraudulent inducement claim under Georgia law, a plaintiff must prove: "(1) false representation, (2) scienter, (3) intention to induce the plaintiff to act or to refrain from acting, (4) justifiable reliance, and (5) damages." Abbott v. HomEq Servicing, Inc., No. 2:09-CV-160-SSC, 2010 WL 11600980, at *6 (N.D. Ga. Sept. 13, 2010). As for the first element, "[a] promise made without a present intent to perform is a misrepresentation of a material fact and is sufficient to support a cause of action for fraud." Lumpkin v. Deventer N. Am. Inc., 672 S.E.2d 405, 408 (Ga. Ct. App. 2008). As for the claim of negligent misrepresentation, "the only real

distinction between negligent misrepresentation and fraud is the absence of the element of knowledge of the falsity of the information disclosed." Holmes v. Grubman, 691 S.E.2d 196, 200 (Ga. 2010).

Plaintiff repeatedly alleges in its Amended Complaint that Defendant falsely represented that it "had the capacity, resources, intellectual property, and technical ability to design, produce, and manufacture all parts needed" to fulfill the parties' agreement. (Doc. 36, pp. 3—4.) Plaintiff makes these allegations with specificity and details the time, date, and place of Defendant's fraudulent statements. According to Plaintiff, Defendant's representatives made these statements knowing that they were not true, and the statements caused Plaintiff to contract with Defendant and to pay Defendant $302,827.25. Plaintiff correctly analogizes this case to Esprit Log & Timber Frame Homes, Inc. v. Wilcox, where the Georgia Court of Appeals found that a jury could conclude that the defendant committed fraud because it "accepted the order with the knowledge that it could not deliver on its promise to deliver [the goods]." 691 S.E.2d 344, 348 (Ga. Ct. App. 2010). The Court distinguished this case from Esprit Log in its Order denying the parties' motions for summary judgment. Now, with Plaintiff's allegations accepted as true, the decision is on point. Plaintiff has also alleged that it justifiably relied on Defendant's misrepresentations and that is suffered damages as a result including the payment of funds to Defendant. (Id.)

For these reasons, the Court grants default judgment to Plaintiff and against Defendant on the issue of liability as to Counts II and III.

### C. Punitive Damages (Count IV)

Defendant's liability for fraud subjects it to liability for Plaintiff's claims of punitive damages. See Smithson v. Parker, 528 S.E.2d 886, 889 (Ga. App. 2000). Moreover, punitive damages may be awarded on default judgment. Functional Prod. Trading, S.A. v. JITC, LLC,

13

No. 1:12-CV-0355-WSD, 2014 WL 3749213, at *8, 14 (N.D. Ga. July 29, 2014) (in case of business fraud alleging company ran fraudulent scheme "to obtain money from unsuspecting victims for goods that are never delivered and never intended to be delivered," awarding punitive damages in amount of $1,000,000 on default judgment). Indeed, "where a plaintiff's complaint alleges that a defaulting defendant's conduct rose to a level that would warrant an award of punitive damages, that defendant is precluded from contesting his liability for such damages." Hansford v. Veal, 894 S.E.2d 215, 227 (Ga. App. 2023). Plaintiff pleaded that Defendant's "fraudulent statements and fraudulent inducement demonstrate willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." (Doc. 36, p. 10.) Moreover, Plaintiff specifically alleged that Defendant made several false statements to Plaintiff knowing them to be untrue to induce Plaintiff to enter a contract and send Defendant over $300,000. (Id. at pp. 2—4.) These allegations, which Defendant now cannot dispute, warrant punitive damages. Hansford, 894 S.E2d at 227 (plaintiff entitled to default judgment on allegations that defendants "deliberately made misrepresentations and concealed relevant facts for the purpose of obtaining money from [plaintiff].").

For these reasons, the Court grants default judgment to Plaintiff and against Defendant on the issue of liability as to Count IV.

### D.     Attorneys' Fees (Count V)

Plaintiff also has a right to default judgment on its claim for attorneys' fees and expenses. The relevant statute provides:

> The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

O.C.G.A. § 13-6-11. Under Georgia law, "if a plaintiff in its original complaint puts the defendant on notice that it is seeking attorney fees and expenses under O.C.G.A. § 13-6-11 as part of the relief prayed for in the case, and if a default judgment is subsequently entered against the defendant for failing to answer the complaint, then the plaintiff is entitled to an award of attorney fees and expenses as a matter of law." Water's Edge Plantation Homeowner's Ass'n, Inc. v. Reliford, 727 S.E.2d 234, 237 (Ga. Ct. App. 2012); see also Cotto L. Grp., LLC v. Benevidez, 870 S.E.2d 472, 480 (Ga. Ct. App. 2022) ("Thus, it is reversible error to decline to award attorney fees where a default judgment has been entered on a complaint that specifically seeks attorney fees under O.C.G.A. § 13-6-11."). Plaintiff specifically sought attorneys' fees in its Complaint and Amended Complaint. Moreover, the Amended Complaint plausibly alleges that Defendant acted in bad faith, was stubbornly litigious, and caused Plaintiff unnecessary trouble an expense by refusing to fulfill its contractual obligations and refusing to return Defendant's payment.

Accordingly, the Court grants default judgment to Plaintiff and against Defendant on the issue of liability as to Count V, and Defendant is liable for Plaintiff's expenses of this litigation including reasonable attorneys' fees under O.C.G.A. § 13-6-11.

### III. Damages

On a motion for default judgment, "[d]amages may only be awarded if the record adequately reflects the basis for the award through a hearing or detailed affidavits establishing the necessary facts." Carrier v. Jordaan, 746 F. Supp. 2d 1341, 1352 (S.D. Ga. 2010) (citing Bardfield v. Chisholm Prop. Circuit Events, LLC, No. 3:09cv232, 2010 WL 2278461, at *7 (N.D. Fla. May 4, 2010)). Awarding money damages is not appropriate "without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation." Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1543 (11th Cir. 1985). "While '[a]n

15

evidentiary hearing is not a *per se* requirement,' the Eleventh Circuit [Court of Appeals] has made clear that 'such hearings are required in all but limited circumstances, as when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages.'" Jordaan, 746 F. Supp. 2d at 1352 (quoting SEC v. Smyth, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) (internal quotations omitted)).

"Even in the default judgment context, '[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters.'" Vision Bank v. Hill, No. 10-0333, 2011 WL 250430, at *2 (S.D. Ala. Jan. 25, 2011) (quoting Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003)). A court must ensure an award is not a "completely unreasonable or speculative amount [ ] with no factual basis." Anheuser Busch, 317 F.3d at 1266. "[I]t remains incumbent on plaintiff to prove the amount of damages to which it is entitled." Vision Bank, 2011 WL 250430, at *2. "Rather than merely telling the Court in summary fashion what its damages are, a plaintiff seeking default judgment must show the Court what those damages are, how they are calculated, and where they come from." PNCEF, LLC v. Hendricks Bldg. Supply LLC, 740 F. Supp. 2d 1287, 1294 (S.D. Ala. 2010)).

This case is simply not one of those "limited circumstances" when the Court can determine Plaintiff's damages without a hearing. Accordingly, the Court will hold a hearing on damages to enable Plaintiff to better state its position on damages including which available remedy it elects and to offer evidence in support of its damages request. At that time, the Court will also hear from Plaintiff regarding its claim for expenses including attorneys' fees and will inquire into the reasonableness of those expenses.

## CONCLUSION

For the reasons and in the manner set forth above, the Court **GRANTS IN PART and DEFERS RULING IN PART** as to Plaintiff's Motion for Default Judgment. (Doc. 68.) The Court **GRANTS** Plaintiff default judgment against Defendant as to liability on all counts. The Court **RESERVES RULING** on damages until after a hearing. That hearing will take place on March 5, 2024, at 10:00 a.m., in Courtroom One, 8 Southern Oaks Court, Savannah, Georgia. Additionally, because the Court has found Defendant liable for the totality of Plaintiff's attorneys' fees, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Attorneys' Fees. (Doc. 62.) Should Plaintiff still seek the fees requested in that motion in addition to the fees awarded under this Order, Plaintiff may explain that request at the upcoming hearing. The Court **DIRECTS** Plaintiff's counsel to attempt to provide a copy of this Order to Defendant by mailing a copy of this Order to Defendant's last known address.

**SO ORDERED**, this 7th day of February, 2024.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA